**John SOSNOWY, Plaintiff,**

v.

**A. PERRI FARMS, INC. and Anthony J. Perry, an individual, Defendants.**

**No. 10–CV–2829 (ADS)(WDW).**

United States District Court, E.D. New York.

Feb. 10, 2011.

459

Frank & Associates P.C., by Peter Arcadio Romero, Esq., Neil Frank, Esq., of Counsel, Farmingdale, NY, Attorneys for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Plaintiff John Sosnowy ("Sosnowy" or "the Plaintiff") commenced this action for unpaid wages against defendants A. Perri Farms, Inc. and Anthony J. Perry (collectively "the Defendants") alleging that the Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), the New York Labor Law ("Labor Law"), and state common law, specifically alleging breach of contract and unjust enrichment ("state common law claims"). Presently before the Court is the Defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the state common law claims and certain of the Labor Law claims including: (1) improper deductions under Labor Law § 193; (2) failure to pay spread of hours pay as defined in the Compilation of Codes, Rules and Regulations of the State of New York (the "N.Y. Rules and Regulations"), tit. 12 § 142–2.4; and (3) failure to pay accrued vacation and/or sick time upon termination pursuant to either Labor Law § 191(3) or Labor Law § 198.

For the reasons set forth below, the Court grants the Defendants' motion to dismiss the Labor Law claims in their entirety, and the state common law claims only insofar as they seek overtime compensation. However, the Court affords the Plaintiff twenty days from the date of this order to serve an amended complaint addressing the specific deficiencies identified in the discussion below.

Goldberg & Dohan LLP, New York, NY, by Penn Ueoka Dodson, Esq., of Counsel, Attorney for the Plaintiff.

## I. BACKGROUND

The following facts are drawn from the complaint, motion papers, and the Declaration of Anthony J. Perry (the "Perry Declaration"), and are construed in the light most favorable to the Plaintiff.

Plaintiff Sosnowy was employed as a salesman at defendant A. Perri Farms, Inc. ("Perri Farms") for approximately twelve years prior to his termination in October 2009. Located in Suffolk County, New York, Perri Farms is "an importer and distributor of wholesale fresh cut flowers as well as plants, floral and garden supplies, and gourmet food." (Compl., ¶¶ 7, 8.) Defendant Anthony J. Perry ("Perry") is a resident of Suffolk County, New York, who was actively involved in operating Perri Farms and who "exercised substantial control over the functions of the employees, including Plaintiff." (Compl., ¶ 14.) Perry has an ownership interest and is one of the ten largest shareholders of A. Perri Farms.

The description of the Plaintiff's duties and compensation are disputed by the parties. According to the Plaintiff he was paid "on an hourly basis at a certain rate of pay"; he worked 60–63 hours per week; and he was rarely able to take meal breaks during the day. (Compl., ¶¶ 24–27.) Based on his contention that he was an employee within the meaning of the FLSA and the Labor Law, the Plaintiff asserts that he was entitled to certain types of payments, including, overtime compensation pursuant to FLSA §§ 207 and 216(b) and the Labor Law as set forth in N.Y. Rules and Regulations tit. 12 § 142–2.2; spread of hours pay for days where he worked more than 10 hours per day as set forth in N.Y. Rules and Regulations tit. 12 § 142–2.4; and accrued vacation and sick pay upon his termination pursuant to Labor Law § 191(3) and 198. In addition, the Plaintiff contends that certain deductions were inappropriately made from his wages on days when he was late to work in violation of Labor Law § 193 and that the Defendants failed to provide adequate break time in violation of Labor Law § 162(2). The Plaintiff also asserts that there was an implied contract between the parties that separately entitles him to payment for overtime compensation and accrued vacation and sick time.

The Defendants do not dispute that the Plaintiff worked more than 40 hours per week, but rather contend that the Plaintiff's complaint improperly represents his compensation and job responsibilities. According to the Defendants, the Plaintiff was employed as an account manager, and that he was employed in a "bona fide executive, administrative, or professional capacity," which exempts him from recovering under certain statutes. (Perry Decl., ¶ 4; Defs.' Reply Br. at 7.) The Defendants also contend that the Plaintiff was not an hourly worker, but rather was paid a bi-weekly salary, and to the extent the Plaintiff could be considered an hourly employee, the Defendants argue that his compensation was well above minimum wage, exempting him from recovering on at least his spread of hours and accrued vacation and sick time claims. (Perry Decl., ¶¶ 5–7.) To support their arguments as to the Plaintiff's compensation, the Defendants attached to the Perry Declaration the Plaintiff's W–2 forms for the years 2007, 2008, and 2009. (Perry Decl., Ex. A.)

The Defendants further assert that the only deductions they made from the Plaintiff's paychecks were for child support, health insurance, and contributions to the Plaintiff's retirement account. (Perry Decl., ¶ 10.) To reflect that these were the only deductions made from the Plaintiff's wages, the Defendants submitted the Plaintiff's 2008 and 2009 payroll report

(the "payroll report"), and a Notice to Withhold Income for Child Support (the "child support deduction form"). (Perry Decl., Exs. B & C.) Finally, the Defendants dispute the existence and terms of the alleged implied contract for overtime wages and accrued vacation and/or sick pay. However, the Defendants do admit that the Plaintiff was paid for two weeks of vacation he took during 2009. (Perry Decl., ¶ 11.)

In the instant motion the Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the breach of contract and unjust enrichment causes of action as duplicative and preempted by the Labor Law and FLSA, and the Plaintiff's claims for improper deductions, spread of hours pay, and accrued vacation and/or sick time under the Labor Law for failure to state a claim, as a matter of law. In addition to opposing the motion, the Plaintiff requests that the Court strike from the record the documents attached to the Perry Declaration. According to the Plaintiff, not only are these documents not "integral" to the complaint, but the Defendants only attached the documents, which contain the Plaintiff's personal information, to embarrass him and coerce him into dropping the lawsuit. The Court will address the admissibility of these documents later in this decision.

## II. DISCUSSION

### A. Standard of Review—Fed. R. Civ. P. 12(b)(6)

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under

Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950. In addition, although the Plaintiff argues that the plausibility pleading standard articulated in *Twombly* should not apply to FLSA cases, the Court in *Iqbal* made abundantly clear that the interpretation of Fed.R.Civ.P. 8(a) articulated in *Twombly* applied to "all civil actions." *Iqbal*, 129 S.Ct. at 1953.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993).

**B. Whether the State Common–Law Claims are Preempted by the FLSA and the Labor Law**

In the complaint, the Plaintiff asserts four causes of action to recover for overtime compensation. First, the Plaintiff alleges that the Defendants "failed to compensate the Plaintiff at a rate of one and one half times his normal hourly rate for hours over 40 in a workweek, in violation of the FLSA." (Compl., ¶ 35.) Next, the Plaintiff contends that "Defendants failed to compensate Plaintiff at a rate of one and one half times his normal hourly rate for hours over 40 in a workweek, in contravention of [the Labor Law]." (Compl., ¶ 43.) Finally, the Plaintiff asserts that the parties had an implied contract whereby the Defendants "agreed to pay Plaintiff a certain rate of pay for all hours worked and time and a half that rate of pay for hours over 40 worked in a workweek" which the Defendants breached by failing to pay him any overtime compensation. (Compl., ¶ 60.) In addition, while the unjust enrichment claim does not specifically state that it applies to overtime wages, it can be presumed from the statement that the Plaintiff seeks "the amount of compensation unlawfully withheld from him." (Compl., ¶¶ 56.)

In addition to overtime compensation, the breach of contract claim seeks to recover for accrued vacation and/or sick time payments upon termination, and the unjust enrichment claim generally asserts entitlement to "the amount of compensation unlawfully withheld . . . liquidated damages, interest, litigation costs, attorney fees, and other damages." (Compl., ¶ 56.) According to the Plaintiff, the state common law claims are pled in the alternative to the FLSA and Labor Law claims under Fed. R.Civ.P. 8(e). (Pl.'s Br. 6.)

The Defendants contend that because the state common law claims are premised on violations of the Labor Law and the FLSA, they are duplicative of and preempted by the statutes. As set forth below, the Court first finds that to the extent the state common law claims seek relief not provided for by the statutes they are not preempted by the statutes. Next the Court addresses whether the FLSA preempts the state common law claims with regard to overtime wages, and finds that to the extent the state common law claim is premised on an FLSA violation it is preempted. Conversely, the Court also finds that, to the extent a state common law claim is premised on a valid contractual agreement not directly implicating the FLSA, it is not preempted. Finally, the Court looks to the substance of the state common law claims, and finds that the Plaintiff has failed to plead the existence of an implied contract, or any other potential ground, to recover overtime wages that are not based on the FLSA or the Labor Law. Accordingly, the Court ultimately determines that the state common law claims must be dismissed.

**1. As to the State Common Law Claims Not Seeking Recovery of Overtime Wages**

█ As an initial matter, the Defendants do not address the fact that the Plaintiff is not only seeking to recover overtime wage compensation through the state common law claims. Specifically, the breach of contract claim seeks damages not only for overtime wages but also for accrued vacation and/or sick time, and the unjust enrichment claim seeks to recover for all unlawfully withheld money, without regard to whether it is owed pursuant to a contract, the Labor Law, or the FLSA. As the Plaintiff correctly notes, the only potential overlap between the state common law claims and the FLSA is the recovery for overtime wages, because the FLSA

does not provide recovery for accrued vacation and sick time. Moreover, as discussed later in this opinion, although the Labor Law does provide a remedy for failure to pay accrued vacation and sick time, that remedy is contingent on the existence of an agreement. To the extent that the state common law claims seek recovery for claims that are unavailable under the FLSA they are not preempted because, "[a]n employer may contractually agree to compensate employees for time that is not mandatorily compensable under the FLSA." *Barrus v. Dick's Sporting Goods, Inc.,* 732 F.Supp.2d 243, 255 (W.D.N.Y.2010) (quoting *Avery v. City of Talladega,* 24 F.3d 1337, 1348 (11th Cir. 1994)); *cf. Chaluisan v. Simsmetal East LLC,* 698 F.Supp.2d 397 (S.D.N.Y.2010) (applying supplemental jurisdiction over a breach of contract claim for accrued vacation time because it shared a "common nucleus of operative fact" with the FLSA overtime wage claim).

### 2. Whether the FLSA Preempts State Common Law Claims for Overtime Wages

The Defendants contend that the FLSA preempts any state common law claims for overtime wages. Moreover, to the extent the FLSA does not preempt all state common law claims for overtime wages, the Defendants argue that the Plaintiff has failed to plead that the basis for the state common law claims for overtime wages can conceivably be based on anything other than the FLSA and Labor Law. Importantly, the Court notes that all of the Defendants' arguments in this regard relate to federal preemption under the FLSA. The Defendants do not cite any cases in support of the notion that duplicative state common law claims and Labor Law claims cannot proceed as alternative legal theories. However, insofar as the Plaintiff does not premise his opposition on

this distinction, the Court decides this motion solely on the question of federal preemption.

"Under the Supremacy Clause of the United States Constitution, state laws that conflict with federal law are without effect, and are preempted." *N.Y. Rest. Ass'n v. N.Y. City Bd. of Health,* 556 F.3d 114, 123 (2d Cir.2009) (citation omitted); *see also Island Park, LLC v. CSX Transp.,* 559 F.3d 96, 101 (2d Cir.2009). "The purpose of Congress is the ultimate touchstone in every pre-emption case." *N.Y. Rest. Ass'n,* 556 F.3d at 123 (citing *Altria Group, Inc. v. Good,* 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008)). The preemption analysis begins "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *N.Y. Rest. Ass'n,* 556 F.3d at 123 (citation omitted). "Congressional intent primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it." *Island Park,* 559 F.3d at 101 (citing *Altria Group,* 129 S.Ct. at 543). There are three types of preemption:

(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*New York SMSA Ltd. P'ship v. Town of Clarkstown,* 612 F.3d 97, 104 (2d Cir.2010) (internal quotation marks omitted). "By their nature, field preemption and conflict preemption are usually found based on

implied manifestations of congressional intent." *Id.* (citing *Altria Group,* 129 S.Ct. at 543). Conflict preemption exists when "compliance with both state and federal law is impossible," and a subset of conflict preemption referred to as "obstacle preemption" applies "when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Capital Bank, N.A. v. Connecticut,* 542 F.3d 341, 351 (2d Cir.2008) (quoting *United States v. Locke,* 529 U.S. 89, 109, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)) (internal quotation marks omitted). "State law is in 'irreconcilable conflict' with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme." *Id.* at 351 (quoting *Rice v. Norman Williams Co.,* 458 U.S. 654, 659, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982)).

There is no provision within the FLSA expressly stating that it preempts state wage law. With regard to field preemption, the Court agrees with those cases that have held that the Savings Clause in the FLSA indicates that Congress did not intend to preempt the entire field of wage law. The Savings Clause states that, "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter...." 29 U.S.C. 218(a) (West 2011). As the Second Circuit has held, "Congress' intent to allow state regulation to coexist with the federal scheme can be found in § 18(a) of the FLSA." *Overnite Transportation Co. v. Tianti,* 926 F.2d 220, 222 (2d Cir.1991); *see also Wang v. Chinese Daily News, Inc.,* 623 F.3d 743, 759 (9th Cir.2010) (stating that "express preemption [is] inapplicable to FLSA because no statutory language expressly preempted state law claims" and "field preemption [is] inapplicable because FLSA explicitly permits states and municipalities to enact stricter wage and hour laws").

■ With regard to conflict or obstacle preemption, the Second Circuit has found that the FLSA does not preempt state regulation of overtime wages, such as the Labor Law, that provide an additional, and even sometimes duplicative, source of substantive rights. Specifically, in *Overnite Transportation Co. v. Tianti,* 926 F.2d 220, 222 (2d Cir.1991), the Second Circuit held that

> Congress' intent to allow state regulation to coexist with the federal scheme can be found in § 18(a) of the FLSA, which explicitly permits states to mandate greater overtime benefits. *See* 29 U.S.C. § 218(a). We also note that every Circuit that has considered the issue has reached the same conclusion-state overtime wage law is not preempted by ... the FLSA.

*Id.* (citations omitted). The Plaintiff attempts to rely on *Davis v. Lenox Hill Hosp.,* No. 03–CV3746, 2004 WL 1926087 (S.D.N.Y. Aug. 31, 2004) to support the proposition that the holding in *Overnite Transportation* is also applicable to state common law claims. In *Davis,* the court denied a motion to dismiss an unjust enrichment claim for overtime wage compensation as preempted by the FLSA, holding that, although a plaintiff "cannot *recover* under both federal and state law for the enforcement of the same right .... [a]t the pleading stage, ... parties are entitled to plead causes of action under both state and federal law to vindicate the same right." 2004 WL 1926087, at *7. Notably, the court in *Davis* placed a caveat on this holding, stating that it did not apply where

"the federal law preempts the state claim." *Id.* Citing only to *Overnite Transportation*, and without any additional analysis, the *Davis* court concluded that "[t]he FLSA does not preempt state law in the area of overtime compensation." *Id.* (citing *Overnite Transportation*, 926 F.2d at 222).

However, most district courts have not read the holding in *Overnite Transportation* so broadly, recognizing that, "[a] decision that the FLSA does not preempt state regulation of overtime wages does not necessarily indicate ... that state common law claims are not preempted, and the Second Circuit has not directly addressed that issue." *Chaluisan v. Simsmetal East LLC,* 698 F.Supp.2d 397, 407 (S.D.N.Y.2010); *Chen v. Street Beat Sportswear, Inc.,* 364 F.Supp.2d 269, 292 (E.D.N.Y.2005) ("The law is unsettled as to whether the FLSA preempts state common law claims."). The basis for the distinction is that, while state overtime wage laws such as the one addressed in *Overnite Transportation* confer a substantive right for overtime compensation separate from the FLSA, state common law claims that are premised on violations of the FLSA simply provide a different remedy for FLSA violations. The Court agrees with this distinction and finds that *Overnite Transportation,* and therefore *Davis,* do not support the proposition that the FLSA does not preempt state common law claims. Accordingly, the Court must look outside of the Second Circuit to resolve the question of whether the FLSA provides exclusive remedies for the enforcement of its own provisions.

The difference between a state wage and hour law providing its own remedies and a state common law claim providing a remedy for an FLSA violation is not purely academic. Allowing a plaintiff to pursue remedies for FLSA violations in a breach of contract action would afford a plaintiff certain benefits otherwise unavailable through the FLSA enforcement scheme. For example, an FLSA claim for overtime compensation is subject to a two-year limitations period, and if the claim arises from a "willful violation" the statute of limitations is three years. *See* 29 U.S.C § 255(a). By contrast, in New York, the statute of limitations for a breach of contract claim is six years. N.Y. C.P.L.R. § 213(2); *see also Anderson v. Sara Lee Corp.,* 508 F.3d 181, 192–93 (4th Cir.2007) ("By contrast, the Class Members' claims for breach of contract, negligence, and fraud come with remedies that, in some respects, are more generous than those provided in the FLSA enforcement scheme.").

Courts addressing whether the FLSA preempts state common law claims appear to reach different conclusions based on whether they follow one of two approaches. The first approach looks to whether the detailed remedial scheme in the FLSA indicates a Congressional intent that the FLSA provide the sole remedy for violations of the FLSA mandates. Those courts following the second approach consider whether the Savings Clause indicates that Congress intended not only to permit states to provide parallel rights, but also permits the states to provide additional remedies for violations of the FLSA.

Those cases that find that the Savings Clause permits additional remedies primarily rely on the Ninth Circuit's holding in *Williamson v. General Dynamics Corp.,* 208 F.3d 1144 (9th Cir.2000). In *Williamson,* the Ninth Circuit held that the FLSA did not preempt a common law fraud claim because: 1) the fraud was not covered by an FLSA provision and 2) the plaintiff's were not attempting to circumvent the statute for a superior remedy because the anti-retaliation provision of the FLSA pro-

vided a broader remedy than the state common law fraud remedy. *Id.* at 1154. In reaching this conclusion, the court in *Williamson* focused on the purpose of the FLSA "to enact minimum wage and maximum hour provisions designed to protect employees" and held that because additional remedies do not provide an obstacle to "protecting employees," common law claims providing additional remedies are not preempted. *Id.; see also Barrus v. Dick's Sporting Goods, Inc.*, 732 F.Supp.2d 243, 256–57 (W.D.N.Y.2010) (relying on *Williamson* in denying a motion to dismiss state common law claims seeking unpaid overtime); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 884 (N.D.Iowa 2008) ("Under the savings clause, a state may clearly provide greater benefits, or rights, than the FLSA. While the savings clause does not specifically reference remedies, the court believes the savings clause indicates that Congress did not foreclose states from providing alternative remedies."). To the extent that *Williamson* is distinguishable because it does not involve a common law claim directly implicating the overtime wage provisions of the FLSA, the Ninth Circuit recently clarified the applicability of *Williamson* to all common law claims in *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir.2010), where the court held that the "FLSA does not preempt a state-law ... claim that 'borrows' its substantive standard from FLSA." 623 F.3d at 760.

On the other hand, those cases that find that the FLSA provides the exclusive remedies for its violations focus primarily on the Congressional intent in crafting the FLSA's remedial scheme. A comprehensive discussion of congressional intent in drafting the FLSA can be found in *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F.Supp. 1027 (N.D.Cal.1972). Although not directly addressing the issue of preemption, the court in *Lerwill* noted that

Congress had created a "very detailed and carefully defined right of action" to enforce the FLSA and held:

> It is true that nowhere in the statute is it provided that Section 216(b) provides the sole means of recovery for an employee. A brief review of the legislative history of the Act, as amended has not revealed an express statement of such intention. On its face, however, a clearer case of implied intent to exclude other alternative remedies by the provision of one would be difficult to conceive. It should not require resort to Latin maxims of construction to show that the provision of one detailed remedy, which necessarily works to define the substantive right to be enforced, would exclude the possibility of alternative remedies in the absence of a clear showing that Congress intended such alternatives.

*Id.* at 1028.

Subsequent cases directly addressing preemption, while noting that Congress enacted the FLSA to "protect employees," have found that Congress also intentionally created a detailed remedial scheme in order to identify exactly what protection employees were entitled to for a violation of the FLSA's mandates. The main case cited for this rationale is the Fourth Circuit's decision in *Anderson v. Sara Lee Corporation*, 508 F.3d 181 (4th Cir.2007), where the court held that the plaintiffs' "FLSA-based contract, negligence, and fraud claims [were] precluded under a theory of obstacle preemption." 508 F.3d at 194. In *Anderson*, the court recognized that although the FLSA neither explicitly authorizes nor prohibits states from creating alternative remedies for FLSA violations, "in the FLSA Congress manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms." *Id.* at 193–94. Thus, the court held that "Congress prescribed

exclusive remedies in the FLSA for violations of its mandates." *Id.* at 194 (citing *Kendall v. City of Chesapeake,* 174 F.3d 437 (4th Cir.1999)); *see also Guerrero v. JPMorgan Chase & Co.,* No. 09–CV–388, 2010 WL 457144, at *4 (E.D.Tex. Feb. 5, 2010) (adopting the reasoning in *Anderson* and dismissing the plaintiff's claims for quantum meruit, unjust enrichment and breach of contract that were predicated on a violation of the FLSA because "[t]he FLSA provides the exclusive remedy for violation of its mandates and pre-empts Plaintiff's FLSA-based state law claims"); *Wood v. TriVita, Inc.,* No. 08–CV–765, 2008 WL 6566637, at *4 (D.Ariz. Sept. 18, 2008) (dismissing a claim under an Arizona statute that permitted treble damages for an FLSA violation because "[t]o allow Plaintiff to bring suit for a violation of the FLSA and seek a remedy other than that provided by the FLSA would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FLSA").

Although the Second Circuit has not directly addressed this issue, the Court finds the Second Circuit's analysis of the FLSA's remedial scheme in *Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132 (2d Cir.1999) to be instructive. In *Herman,* the Second Circuit addressed whether employers had a right to the remedy of contribution or indemnification under either the FLSA or through state law based on a violation of the FLSA. The Court looked to four factors in determining whether the FLSA barred the remedies of contribution and indemnification. Three of the factors are inapplicable to the instant case, namely that the FLSA did not explicitly provide for contribution and indemnification, that employers are not "members of the class for whose benefit the FLSA was enacted," and that the FLSA's legislative history is silent on the right to contribution or indemnification. *Id.* at 144. However, relevant to the matter at hand, is the Second Circuit's consideration of the FLSA's "comprehensive remedial scheme," which led the court to find that "[s]uch a comprehensive statute strongly counsels against judicially engrafting additional remedies." *Id.* Moreover, with regard to whether the employers could look to state common law to provide the right to contribution or indemnification for a violation of the FLSA, the court held that "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect." *Id.*

This Court finds that through the comprehensive remedial scheme, Congress struck the intended balance between the purpose of the FLSA and the vindication of its provisions, and therefore allowing additional remedies for duplicative claims would serve as an obstacle to the enforcement of the FLSA. *See Chen v. Street Beat Sportswear, Inc.,* 364 F.Supp.2d 269, 293 (E.D.N.Y.2005) (holding that the FLSA preempted negligence claims because they were "founded upon the same facts as and therefore duplicative of the FLSA claims") (internal quotation marks omitted); ; *Flores v. Albertson's, Inc.,* No. 01–CV–515, 2003 WL 24216269, at *5–6 (C.D.Cal. Dec. 9, 2003) ("To allow Plaintiffs' negligence claims to proceed, which are nothing more than additional legal theories to recover damages stemming from the alleged wage and hour claims, would upset the balance established by Congress in enacting [the FLSA] ... the exclusive remedy for such violations is the FLSA."); *Petras v. Johnson,* No. 92–CV–8298, 1993 WL 228014, at *2, *4 (S.D.N.Y. Jun. 22, 1993) (noting that "[c]ourts have consistently held that [§ 207 of the FLSA] is the exclusive remedy for enforcing rights created under the FLSA," and dismissing the plaintiff's fraud claim because the "alleged fraud consist[ed] of the intentional frustration of the FLSA

overtime rules, for which the FLSA provides a remedy in the form of liquidated damages"); *Tombrello v. USX Corp.,* 763 F.Supp. 541, 545 (N.D.Ala.1991) ("Courts have consistently held the [FLSA] is the exclusive remedy for enforcing rights created under the FLSA.... As a matter of law, plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to the FLSA claim."); *but see Avery v. City of Talladega,* 24 F.3d 1337, 1348 (11th Cir.1994) (denying a motion to dismiss a breach of contract claim despite the fact that the plaintiffs' employment contract expressly incorporated the FLSA's rules on hours worked and determination of overtime because "the plaintiffs may not recover twice for the same violation" and therefore "the breach of contract claim survives merely as an alternative legal theory to redress any wrong that may have been done them"); *Kaur v. Royal Arcadia Palace, Inc.,* 643 F.Supp.2d 276, 297 (E.D.N.Y.2007) (denying summary judgment on unjust enrichment claim because it was plead in the alternative to the FLSA and contract claims and therefore the unjust enrichment claim "would only be adjudicated if the FLSA and contract claims were dismissed and there was no adequate remedy at law").

However, while the FLSA preempts explicitly FLSA-based common law claims, the FLSA does not necessarily prevent parties from contracting for overtime wage compensation. Thus, central to this Court's analysis is whether the Plaintiff's state common law claims are premised on violations of the FLSA, or upon some other agreement between the parties to provide protection greater than that afforded by the FLSA. *Choimbol v. Fairfield Resorts, Inc.,* No. 05–CV–463, 2006 WL 2631791 at *5 (E.D.Va. Sep. 11, 2006) ("[D]istrict courts examining the issue of preemption have repeatedly focused on whether the factual basis for claims essentially duplicate or are equivalent to the plaintiffs' respective FLSA claims."); *Morrow v. Green Tree Servicing, L.L.C.,* 360 F.Supp.2d 1246, 1252 (M.D.Ala.2005) ("Whether Morrow's breach-of-contract and unjust-enrichment claims can co-exist with her FLSA claims or are preempted by the FLSA depends on the nature of her state-law claims.").

### 3. Whether the Plaintiff's State Common Law Causes of Action for Overtime Wage Compensation Identify a Non–Statutory Basis for Relief

█ It is well-established that parties cannot contract for lesser protections than the FLSA, which sets the lower limit for overtime compensation. *Fuentes v. CAI Intern., Inc.,* 728 F.Supp.2d 1347, 1354 (S.D.Fla.2010) ("Because the FLSA requires overtime compensation for hours worked in excess of 40, which cannot be contractually abridged or waived, the plaintiff's contractual waiver of overtime in the Release and Waiver of Overtime Compensation is preempted by the FLSA."); *cf. Lerwill v. Inflight Motion Pictures, Inc.,* 343 F.Supp. 1027 (N.D.Cal.1972) (holding that "if the employee brings an action ... based on his contract of employment, the contract should be interpreted, construed and enforced just as would any contract." However, to the extent the contract violates the FLSA, the court noted that "the employee will retain whatever remedy he may have under 216(b) to enforce his rights under the [FLSA]"). However, courts have also found that, to the extent a contract provides greater rights to overtime compensation than the FLSA, the FLSA does not preempt the contract claim. *See Atlanta Prof'l Firefighters Union v. Atlanta,* 920 F.2d 800, 806 (11th Cir.1991) (holding that a failure

to calculate holiday and relief days in the overtime calculation, which was required by the employment contract but not the FLSA, was a violation of the contract and not the FLSA); *Cf. Patel v. Baluchi's Indian Restaurant*, No. 08–CV–9985, 2009 WL 2358620, at *5 (S.D.N.Y. July 30, 2009) (exercising supplemental jurisdiction over a breach of contract claim where the evidence of the plaintiff's job title, hours, and wages was at the heart of the FLSA overtime wage claim, as well as the plaintiff's breach of contract claim which alleged that the plaintiff "worked more hours for less money than provided by the terms of his contract with Defendants").

Indeed, the Court finds no indication in either the FLSA or its remedial scheme that prevents courts from enforcing contracts that provide for equal or greater overtime benefits than the FLSA. "Simply put, if the terms of the employment agreement do not violate the FLSA, freedom of contract prevails." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1284 (4th Cir. 1996); *see also DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F.Supp.2d 1026, 1031 (E.D.Wis.2008) ("Plaintiffs have alleged, wholly aside from the FLSA, that Waupaca contractually agreed to pay them for the hours they worked and that Waupaca breached that contract .... this case is unlike *Anderson*, where the Court held that a state contract claim which sought merely to enforce FLSA rights as opposed to rights arising out of a valid employment contract.").

 Here, the Plaintiff asserts in his opposition that his contract claim is based on the parties' employment relationship, and not the FLSA. Conversely, the Defendants contend that the Plaintiff is simply attempting to improperly recast his statutory claim as one sounding in contract, and that the Plaintiff will ultimately have to prove a violation of the FLSA to prevail on

the contract and unjust enrichment claims. The Plaintiff includes the following factual allegations in the complaint to support his breach of contract cause of action for overtime wages:

58. Plaintiff and Defendants had an implied employment contract insofar as the employment relationship is inherently contractual in nature.

59. Plaintiff agreed to perform certain functions for Defendants, in exchange for certain compensation.

60. Specifically, Defendants agreed to pay Plaintiff a certain rate of pay for all hours worked, and time and a half that rate of pay for hours over 40 worked in a workweek.

(Compl., ¶¶ 58–60.) Stating that a contract existed because an employment relationship is "inherently contractual in nature" is circular reasoning that fails to identify any legal basis for a contract. In addition, the language identifying the alleged agreement as to overtime is virtually identical to the language of the Plaintiff's overtime wage claims under the FLSA and the Labor Law. (*See* Compl., ¶¶ 35 & 43 (both stating that the "Defendants failed to compensate Plaintiff at a rate of one and one half times his normal hourly rate for hours over 40 in a workweek" in violation of their respective statutes).)

The Court does not deny the possibility that the parties had an implied contract to provide the Plaintiff with overtime compensation separate and apart from the Defendants' obligations under the FLSA requirements. However, the allegations in the complaint are insufficient to state a claim insofar as the Plaintiff "identif[ies] no specific consideration, contractual terms or obligations independent of the federal and state statutory obligations underlying their other statutory causes of action" and "[t]he allegations of the complaint do not demonstrate the existence of an indepen-

dent, enforceable agreement." *Krichman v. J.P. Morgan Chase & Co.*, No. 06–CV–15305, 2008 WL 5148769, at *4 (S.D.N.Y. Dec. 8, 2008). On its face the complaint appears to do "nothing more than an attempt to cloak statutory claims in contract theory." *Id.; see also Lopez v. Flight Servs. & Sys. Inc.*, No. 07–CV–6186, 2008 WL 203028 (W.D.N.Y. Jan. 23, 2008) (dismissing a breach of contract claim that alleged that the defendant violated "its promise to pay Plaintiffs 'their hourly wage rate for all of their hours of work, and overtime at the rate of one and one-half times their regular wage rate, if they worked more than 40 hours in any work week,'" and sought "all unpaid wages and overtime' ... pertain[ed] to Defendants' alleged failure to pay Plaintiffs in accordance with the FLSA"); *Botello v. COI Telecom, LLC*, No. 10–CV–305, 2010 WL 3784202, at *4 (W.D.Tex. Sept. 21, 2010) (dismissing plaintiff's state law claims for quantum meruit, unjust enrichment, and breach of contract as preempted by the FLSA because they were "predicated on Defendant's alleged failure to compensate him for hours worked in excess of 40 hours; a requirement imposed by the FLSA [and] [t]he FLSA provides the exclusive remedy for violation of its mandates"). Similarly, the Plaintiff's unjust enrichment claim as pled does not make clear whether it relies on the FLSA, the Labor Law, or some other source for the basis of relief.

Although the Court must make all reasonable inferences in favor of the Plaintiff, there is nothing in the complaint that would permit the Court to infer that the implied contract for overtime compensation or the unjust enrichment claims are based on anything other than the federal and state statutes. Accordingly, the Court dismisses the breach of contract and unjust enrichment claims only insofar as they seek overtime wage compensation. However, the Court will afford the Plaintiff

twenty days from the date of this order to serve an amended complaint identifying a non-statutory basis for the overtime wage claim. *See Morrow v. Green Tree Servicing, L.L.C.*, 360 F.Supp.2d 1246, 1252–53 (M.D.Ala.2005) (dismissing the plaintiff's breach of contract and unjust enrichment claims but granting the plaintiff the opportunity to amend, holding that "due to the vagueness of [the plaintiff's] claims, the court can only suspect, but cannot conclude, that her state-law claims are preempted by the FLSA" and therefore "it would be premature to hold that the FLSA prevents [plaintiff] from bringing claims for breach of contract and unjust enrichment"); *but see Chaluisan v. Simsmetal East LLC*, 698 F.Supp.2d 397, 408–09 (S.D.N.Y.2010) (denying a motion to dismiss an unjust enrichment claim in light of the uncertainty of whether the unjust enrichment claim was duplicative, and in light of "the unsettled nature of the law" and stating, without indicating whether the outcome would result in preemption, that "[d]iscovery will reveal whether this claim seeks overtime compensation and whether it is duplicative of Plaintiff's FLSA claim for overtime compensation").

### C. As to the Improper Deduction Claim under Labor Law § 193

New York Labor Law § 193 ("section 193") provides that "[n]o employer shall make any deduction from the wages of an employee" except those permitted by law or authorized by the employee. N.Y. Lab. § 193 (McKinney 2011). "Wages" are defined in Labor Law § 190(1) as the "earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." The Plaintiff alleges that the Defendants violated section 193 by "ma[king] deductions from Plaintiff's wages other than

those authorized under [section 193]." (Compl., ¶ 47.) Specifically, the Plaintiff asserts, by way of "example," that the Defendants "made deductions to Plaintiff's wages for alleged tardiness." (Compl., ¶ 48.) As an initial matter, the Court will not consider the child support deduction form or the payroll reports submitted by the Defendants as evidence that they did not make any improper deductions. These documents are clearly inadmissible on a Rule 12(b)(6) motion to dismiss as they are outside the scope of the complaint, and the Court notes that the Defendants do not argue otherwise. In this regard, the Court grants the Plaintiff's request to have these documents stricken from the record.

At first glance, the central dispute between the parties appears to be whether nonpayment of wages for tardiness constitutes a "deduction" under the statute. In reality, the parties are arguing completely different issues. The Plaintiff's arguments are focused on whether a penalty for tardiness constitutes an improper deduction. In particular, the Plaintiff uses the dictionary definition of deduction as "something that is or may be subtracted" to infer that where the "something" is a penalty for tardiness, it constitutes an improper deduction under section 193. (Pl.'s Br. at 11.) Conversely, the Defendants do not address the penalty issue at all, but rather argue that there is a distinction between a deduction and a failure to pay, and that their alleged misconduct is properly classified as a failure to pay the Plaintiff for missed work due to being late.

As an initial matter, the Court does not need to look to outside sources to determine whether a penalty constitutes an improper deduction under section 193 because N.Y. Rules and Regulations tit. 12 § 142–2.10 ("section 142–2.10") supplements section 193 by providing examples of improper deductions. Section 142–2.10 states in relevant part that:

> (a) Wages shall be subject to no deductions, except for allowances authorized in this Part, and except for deductions authorized or required by law, such as for social security and income tax. Some examples of prohibited deductions are:
>
> > (1) deductions for spoilage or breakage;
> >
> > (2) deductions for cash shortages or losses;
> >
> > (3) fines or penalties for lateness, misconduct or quitting by an employee without notice.

N.Y. Comp.Codes R. & Regs. tit. 12 § 142–2.10 (McKinney 2011). Clearly stated within the statute is that "fines or penalties for lateness" constitute improper deductions. Inexplicably, although the Plaintiff cites to section 142–2.10 to support the improper deduction claim in the complaint, he fails to reference section 142–2.10 in his opposition to the instant motion. Regardless, to the extent the Plaintiff's complaint alleges a penalty for tardiness, it would be sufficient to state a claim.

However, the Court's inquiry does not end here because it is not clear from the complaint whether the Plaintiff actually alleges that the deductions were in the form of a fine or penalty. Presumably this ambiguity is responsible for the parties' divergent arguments. In the complaint, the Plaintiff states that "[o]n at least one occasion, Defendants deducted several hours worth of pay due to alleged tardiness." (Compl., ¶ 33.) There is no indication in the complaint whether the Plaintiff is alleging that the deductions were improper because he was not actually late, or if he is alleging that the deductions were improper because they exceeded the number of hours that he was allegedly late. Al-

though the Plaintiff claims in his opposition to the instant motion that the example in the complaint refers to "deductions as punishment for tardiness," the allegation in the complaint is too ambiguous for the Court to reach that conclusion. The resolution of this ambiguity is central to determining whether the Plaintiff has a valid claim.

■ On the one hand, the Plaintiff may be alleging that, in addition to not paying him for hours worked when he was tardy, the Defendants deducted an additional amount from his wages as punishment. Failing to pay the Plaintiff wages earned for time worked as a punishment constitutes a prohibited "penalty," which is consistent with "the purpose of § 193 ... to prohibit employers deducting from employees' paychecks any wages already earned unless so required by law or for the benefit of the employee." *Gennes v. Yellow Book of New York, Inc.*, 3 Misc.3d 519, 521, 776 N.Y.S.2d 758 (2004), *aff'd*, 23 A.D.3d 520, 806 N.Y.S.2d 646 (2d Dep't 2005).

On the other hand, if the Plaintiff is alleging that the Defendants improperly determined he was tardy and therefore failed to pay him for hours worked, that would not constitute an improper deduction. This is simply an allegation that the Defendants failed to pay him for hours worked. *See Strohl v. Brite Adventure Center, Inc.*, No. 08–CV–259, 2009 WL 2824585, at *9 (E.D.N.Y. Aug. 28, 2009) (dismissing an improper deduction claim where the plaintiff alleged that the defendant violated section 193 by adjusting her total hours downward as a penalty for punching in before or after her 8:00am start time because the "defendants did not 'deduct' any amount from [the plaintiff's] wages, but simply failed to pay her all the wages she had earned."); *Ireton–Hewitt v. Champion Home Builders Co.*, 501 F.Supp.2d 341, 353 (N.D.N.Y.2007) ("Champion did not make unauthorized deductions from Ireton–Hewitt's vacation or severance pay. Rather, it never tendered payment of unused vacation pay and severance pay to plaintiff."). A failure to pay an hourly worker, which the Plaintiff asserts he was, for hours not worked is not equivalent to a fine or a penalty. If the Court cannot determine what the Plaintiff is alleging, it is unclear how the Defendants could properly be on notice of the claim against them.

In addition, it is also unclear whether by pleading the tardiness deduction as an "example," the Plaintiff also intended to assert a claim based on other improper deductions. To the extent that the Plaintiff seeks to recover for other improper deductions, those deductions must be specifically identified in the complaint. A vague and conclusory allegation that the Defendants made improper deductions does not put the Defendants on notice of the actual basis for the claim against them and does not satisfy the requirements of Fed. R.Civ.P. 8(a).

Accordingly, the Court dismisses the improper deduction cause of action for failure to state a claim as to the tardiness deduction, as well as any additional deduction. However, this dismissal is also without prejudice and the Court will afford the Plaintiff twenty days from the date of this order to amend the complaint to clarify the nature of the alleged improper deductions.

**D. As to the Spread of Hours Claim under N.Y. Rules and Regulations tit. 12 § 142–2.4**

■ The Plaintiff contends that the Defendants failed to pay him "spread of hours" pay on those days where he worked more than ten hours. As an initial matter, although the Plaintiff states the claim as a violation of N.Y. Rules and Regulations tit.

12 § 137–1.7, the correct provision applicable to the Plaintiff is § 142–2.4 ("section 142–2.4"). Section 142–2.4 provides that:

An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

(a) the spread of hours exceeds 10 hours; or

(b) there is a split shift; or

(c) both situations occur.

N.Y. Comp.Codes R. & Regs. tit. 12 § 142–2.4 (McKinney 2011). Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." N.Y. Comp.Codes R. & Regs. tit. 12 § 142–3.16. The Defendants' seek dismissal of this claim on the ground that section 142–2.4 is inapplicable to an employee who makes over the minimum wage, and is therefore inapplicable to the Plaintiff. In opposition, the Plaintiff argues that this issue is unsettled in the law, and that the Court should follow the reasoning in *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327 (S.D.N.Y.2005), where the court found that section 142–2.4 was applicable to all employees eligible under the section regardless of whether they make more than the minimum wage.

In *Yang,* the defendant argued that the court should calculate the damages for its spread of hours violation in conjunction with an opinion by the New York Department of Labor. The Department of Labor opinion letter stated that:

[I]f the weekly wages actually paid to an employee equal or exceed the total of: (1) 40 hours paid at the basic minimum wage rate; (ii) overtime paid at the particular employee's overtime rate; and (iii) one hour's basic minimum wage rate for each day the employee worked in excess of 10 hours, then no additional compensation is due.

*Id.* at 339. The court chose not to defer to the New York Department of Labor opinion letter because the question was one of "pure legal interpretation of statutory terms" and the "effect of adopting the agency's interpretation would be to carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage." *Id.* Based on a review of the statute, the court held that there was nothing in the language of the statute that would suggest such an exception was applicable. *Id.* at 340.

As the Defendants point out, a majority of the cases since *Yang* have disagreed as to both the holding that the plain language of the statute did not limit its applicability to minimum wage workers, *Chan v. Triple 8 Palace, Inc.*, No. 03–CV–6048, 2006 WL 851749, at *21 (S.D.N.Y. March 30, 2006) (holding that because section 142–2.4 explicitly provides for an additional wage only "in addition to the *minimum wage*" required under New York law, "[i]t is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate") (emphasis in original), and the court's decision not to grant deference to the Department of Labor opinion letter, *Seenaraine v. Securitas Security Services USA, Inc.*, 37 A.D.3d 700, 701–02, 830 N.Y.S.2d 728, 729 (2d Dep't 2007) ("[T]he Department of Labor's interpretation of the regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language. Thus, it is entitled to deference."). *See also Almeida v. Aguinaga,* 500 F.Supp.2d 366, 370 (S.D.N.Y.2007) ("The 'exception' perceived by the *Yang* court is illusory: no group of well-paid workers is carved out from getting more 'minimum'

pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law."); *Espinosa v. Delgado Travel Agency*, No. 05–CV–6917, 2007 WL 656271, at *1–2 (S.D.N.Y. March 2, 2007) ("By its plain language, section 142–2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); *Jenkins v. Hanac, Inc.*, 493 F.Supp.2d 556, 558 (E.D.N.Y.2007) (citing the statutory interpretation in *Chan* and the rationale for deferring to the Department of Labor from *Seenaraine* in concurring with the court in *Espinosa* that "the regulation does not ensure additional compensation to employees whose wages sufficiently exceed the minimum wage floor") (internal quotations and alteration omitted); *Franklin v. Breton Int'l, Inc.*, No. 06–CV–4877, 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006) (holding that New York's " 'spread of hours' provision applies only to workers earning the minimum wage"); *but see Cuzco v. Orion Builders, Inc.*, No. 06–CV–2789, 2010 WL 2143662 (S.D.N.Y. May 26, 2010) (relying solely on *Yang* without discussion as to the split in holding that "[u]nder the NYLL, if an employee's workday exceeds 10 hours, he must receive one additional hour's pay 'at the basic minimum hourly wage rate' ").

Based on the Court's own reading of the statute, the Court agrees with the cases that find that the explicit reference to the "minimum wage" in section 142–2.4 indicates that "the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law." *Almeida*, 500 F.Supp.2d at 370. In the complaint, the Plaintiff does not plead that he was paid the minimum wage, but rather that he was "paid on an hourly basis at a certain rate of pay." (Compl., ¶ 24.) There is no allegation, nor facts from which the Court can infer, that the Plaintiff's rate of pay would entitle him to spread of hours payments under section 142–2.4. Thus, the Court grants the Defendants motion to dismiss the spread of hours claim.

Whether this dismissal is without prejudice to the Plaintiff's right to amend this claim is dependent on whether the Court takes into consideration the W–2 forms that the Defendants attached to the Perry Declaration. These W–2 forms show that for the years 2007, 2008, and 2009 the Plaintiff was paid at a rate significantly higher than minimum wage. The Defendants argue that the "Plaintiff should not be permitted to press a frivolous claim for "spread of hours" pay merely because he artfully avoided any mention of his pay rate in his Complaint or opposition." (Defs.' Br. at 5.) To the extent the Court does not find it proper to consider the documents on a motion to dismiss, the Defendants request that the Court convert the motion to dismiss the spread of hours claim into one for summary judgment. For his part, the Plaintiff contends the Court should not consider the W–2 forms because it was improper for the Defendants to attach W–2 forms containing personal information in a public document. In addition, although not disputing the accuracy of these records, the Plaintiff does dispute the relevance of W–2 forms covering only three out of his twelve years of employment.

■ "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111

(2d Cir.2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999)). "Where a document is not incorporated by reference, the court may [nevertheless] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

In this regard, the Second Circuit has held that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take that document into consideration in deciding the defendants' motion to dismiss, without converting the proceeding to one for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991). In addition, even where the document is "integral" to the complaint, to be considered on a motion to dismiss there must be no dispute regarding the authenticity, accuracy or relevance of the document. *See DiFolco*, 622 F.3d at 111 (citing *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.2006)).

The Court agrees with the Defendant that the Plaintiff's rate of pay was "integral" to pleading a spread of hours claim. However, in light of the unsettled nature of the law, it was reasonable for the Plaintiff to omit such information. Insofar as the Plaintiff still believes he can state a claim for spread of hours, the Court will not deny him the right to replead. Therefore, the Defendants' motion to dismiss the Plaintiff's spread of hours claim is granted, without prejudice. The Plaintiff is afforded the right to serve an amended complaint as to this claim within twenty days of the date of this order. Finally, although the Court does not strike the W–2 forms from the record, the Court directs the Defendants to refile a version of the exhibit redacting the Plaintiff's personal information.

### E. As to the Claims for Accrued Vacation and/or Sick Time under Labor Law § 191(3) and/or § 198

The Plaintiff alleges in the complaint that the Defendants violated the Labor Law by failing to pay the Plaintiff "for accrued vacation and/or sick time upon his separation from the company." (Compl., ¶ 51.) It is axiomatic that an employee has no inherent right to paid vacation and sick days, or payment for unused vacation and sick days, in the absence of an agreement, either express or implied. The parties disagree as to whether the Labor Law provides a statutory basis for imposing these obligations on an employer. The Plaintiff asserts that the statutory basis for this claim can either be found in Labor Law § 191(3) ("section 191(3)") or § 198 ("section 198"). Conversely, the Defendant argues that the only provision that might support the Plaintiff's claim for accrued vacation and sick day payments is Labor Law § 198–c ("section 198–c"), but that the Plaintiff has failed to adequately plead the elements entitling him to recovery under this section. The Court will address each of these statutory provisions in turn.

Section 191(3) provides that "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred." N.Y. Lab. § 191(3) (McKinney 2011). Pursuant to Labor Law § 190, wages include "benefits and wage supplements," which are defined in Labor Law § 198–c(2) as "reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holi-

day pay." However, as the Defendants' point out, section 190 specifically excepted "benefits and wage supplements" from the definition of "wages" for the purposes of section 191(3). *See* N.Y. Labor § 190 (stating that the term "wages" includes "benefits and wage supplements" as defined in section 198–c, *"except for the purposes of section 191 and section 192"*) (emphasis added). Thus the Court agrees that section 191(3) does not provide a statutory right to accrued vacation and sick day payments upon termination

Nevertheless, the Plaintiff contends that, if the Court finds section 191(3) inapplicable, he still has a claim under section 198. Section 198 provides that

> Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years. All employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of such action . . .

N.Y. Lab. § 198(3). As specifically stated in the statute, section 198 applies to "an action to recover upon a liability imposed by [article 6]," and does not provide its own substantive source of recovery. Accordingly, an employee such as the Plaintiff can only recover benefits under section 198 if he is entitled to benefits under one of the substantive provisions of Labor law article 6.

The Defendants argue that the only provision that would provide a substantive right to recover accrued vacation and sick pay upon termination under the Labor Law is section 198–c. Section 198–c(1) requires the payment of benefits by "any employer who is party to an agreement to pay or provide benefits or wage supplements to employees." N.Y. Lab. § 198–c. This section codifies the general understanding that vacation and sick pay are purely matters of contract between an employer and employee. To the extent that the Labor Law does provide a basis for recovery of accrued vacation and sick day payments under section 198–c, it is only to enforce those agreements when they are made with a certain type of employee. The application of section 198–c is narrower than the general wage provisions in its definition of what type of employee can recover for a violation, insofar as it specifically carves out any person in "a bona fide executive, administrative, or professional capacity whose earnings are in excess of nine hundred dollars a week." N.Y. Labor § 198–c(3). The Defendants contend that the Plaintiff has not stated a cause of action for accrued vacation and/or sick pay under section 198–c because: 1) they have not alleged the existence of an agreement requiring the payment of these accrued benefits and 2) the Plaintiff earned in excess of $900 per week "in a bona fide executive, administrative or professional capacity."

The Court agrees with the Defendant that the Plaintiff was required to plead the existence of an agreement that entitled him to accrued vacation and/or sick pay upon his termination because "[t]he primary and dispositive issue in applying [section 198–c] is whether there was any basis for the accrual of vacation benefits." *Gennes v. Yellow Book of New York, Inc.*, 23 A.D.3d 520, 522, 806 N.Y.S.2d 646, 648 (2d Dep't 2005); *Kolesnikow v. Hudson Valley Hosp. Center*, 622 F.Supp.2d 98, 120 (S.D.N.Y.2009) ("An employee's entitlement to receive payment for accrued, unused paid time off upon termination of employment is governed by the terms of the employer's publicized policy."); *Glenville Gage Co., Inc. v. Indus. Bd. of Appeals*, 70 A.D.2d 283, 286, 421 N.Y.S.2d 408, 410 (3d Dep't 1979), *aff'd* 52 N.Y.2d 777, 417 N.E.2d 1009, 436 N.Y.S.2d 621

(1980) ("All that is required by section 198–c is that an employer abide by the terms of his agreement to provide benefits.").

However, viewing the facts in the light most favorable to the Plaintiff, the Court finds that the Plaintiff did plead the existence of an agreement to provide accrued vacation and/or sick pay upon termination. In the complaint, the Plaintiff alleges in his implied contract claim that an implied contract existed, and that one way in which the Defendants breached that contract was by failing to pay accrued vacation and/or sick time upon his termination. From this, the Court can infer that the Plaintiff is alleging that the obligation to pay these benefits arose from an implied contractual agreement. In addition, the Defendants state in the Perry Declaration that the Plaintiff was paid for two weeks of vacation in 2009. (*See* Perry Decl., ¶ 11.) This further supports the plausibility that the parties had some kind of agreement governing vacation pay.

Nevertheless, the Court finds that the Plaintiff has failed to state a claim to recover the accrued benefits under section 198–c. In the complaint, the Plaintiff alleges that at all times he was "employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651." The definition of employee under Labor Law § 651 explicitly states that it does not include "any individual who is employed or permitted to work ... in a bona fide executive, administrative, or professional capacity." Thus, by pleading that he fits within the definition of employee under section 651, the Plaintiff has pled that he was not employed in a "bona fide executive, administrative, or professional capacity." However, alleging that he is an "employee" under the provisions of section 651 is a legal conclusion, which is insufficient to state a claim under Federal Rule of Civil Procedure 8(a). The Plaintiff does not include any factual allegations in the complaint describing his primary duties or responsibilities so that the Court may be able to be infer that he was not employed in a "bona fide executive, administrative or professional capacity." Accordingly, the Court grants the Defendants motion to dismiss the claim for the accrued vacation and sick day payments without prejudice, and affords the Plaintiff leave to amend the complaint.

## III. CONCLUSION

For the foregoing reasons it is hereby:

**ORDERED,** that the Defendants' motion to dismiss the breach of contract and unjust enrichment claims is granted insofar as they seek to recover for overtime compensation without prejudice, and it is further

**ORDERED,** that the Defendants' motion to dismiss the improper deductions claim under Labor Law § 193, the spread of hours claim under N.Y. Rules and Regulations tit. 12 § 142–2.4, and the accrued vacation and/or sick time pay claim under Labor Law §§ 191(3) and 198 is granted without prejudice, and it is further

**ORDERED,** the Plaintiff is afforded twenty days from the date of this order to serve an amended complaint as to all of the dismissed claims, and it is further

**ORDERED,** that the Defendants replace the submitted W–2 forms (Exhibit 3 to Docket Entry No. 9) with a redacted version, and it is further

**ORDERED,** that the Clerk of the Court is respectfully requested to strike from the record the payroll report and the child support deduction form (Exhibits 4 and 5 to Docket Entry No. 9).

**SO ORDERED.**