CORTIÑAS, J.
 

 Dennis R. Martinez (“Claimant”) challenges the Unemployment Appeals Commission (“UAC”) decision affirming the denial of unemployment compensation benefits. We disagree with the conclusion that Claimant voluntarily left his employment without good cause and, therefore, reverse.
 

 
 *170
 
 Claimant was employed from approximately June 1, 2007 to November 7, 2009 as a full time salesperson at an automobile dealership owned by Ford Midway Mall, Inc. (“Employer”). The appeals referee (“Referee”) found that when Claimant was hired, he was advised that he would be paid on a commission basis.
 
 [1]
 
 However, around June 2008, Employer implemented a new draw compensation based pay (the “Draw Policy”). Under the Draw Policy, Claimant received a weekly draw of $290.00, which was deducted from actual earned' commission disbursed monthly. During the time leading up to the separation, business declined, and consequently, beginning in approximately September 2009, Claimant was not earning any commission. This resulted in Claimant’s weekly draw of $290.00 becoming money owed to Employer, which at the time of separation, totaled $2,005.00. Claimant met with Employer, discussed his dissatisfaction with wages and the money owed to Employer, and resigned.
 

 The Referee disqualified Claimant from receiving unemployment benefits on the basis that he voluntarily left work without good cause attributable to Employer. The Referee’s conclusions of law stated:
 

 It was shown that the claimant resigned due to dissatisfaction with his wages and because he owed money to the employer. In this case it was shown the claimant was considered to be on a draw commission basis. The record shows the employer implemented the new draw against commission policy a year after the claimant was hired. It was shown the new policy provided commission based employees an advance for their commission every week and at the end of the month it was shown that the advance was deducted from any commission that employees earned during the month. The record indicates that towards the end of the claimant’s employment he did not earn any commission and therefore he had a pending balance with the employer for the advances he received. Furthermore, the record shows that while the claimant was dissatisfied with his wages and his pending balance to the employer, it was not shown that the employer violated any of the terms regarding the new., draw against commission policy, and the claimant understood and accepted the new terms’ of the commission policy when it was implemented over a year prior to the claimant’s resignation. In this case it has not been shown that these conditions were contrary to the terms of the claimant’s employment. While the claimant may have had good personal reasons for quitting, it has not been shown that the decision to quit was impelled by any action on the part of the employer.
 

 Ultimately, the UAC upheld Claimant’s disqualification. This appeal follows.
 
 [2]
 

 
 *171
 
 The legal issue presented on appeal is “whether the UAC wrongfully denied [C]laimant unemployment benefits to which he was entitled” under law.
 
 Recio v. Kent Sec. Servs. Inc.,
 
 727 So.2d 320, 321 (Fla. 3d DCA 1999). On review, an appellate court cannot make credibility determinations or substitute its judgment for that of the appeals referee.
 
 Mid-Fla. Freezer Warehouses, Ltd. v. Unemployment Appeals Comm’n,
 
 41 So.3d 1014, 1017-18 (Fla. 5th DCA 2010). “However, this Court can overturn a legal conclusion of the [UAC] that is clearly erroneous.”
 
 Id.
 
 at 1018;
 
 see also Cochran v. Fla. Unemployment Appeals Comm’n,
 
 46 So.3d 1195, 1197 n. 1 (Fla. 1st DCA 2010) (holding that on appeal, the legal conclusions of an unemployment appeals referee are entitled to less deference than findings of fact). Although we accept the Referee’s findings of fact, we reject the legal conclusion that Claimant voluntarily left work without good cause attributable to Employer under law.
 

 “The declared public purpose of Florida’s Unemployment Compensation Law is to provide financial assistance to ‘persons unemployed through no fault of their own.’”
 
 Moore v. Fla. Unemployment Appeals Comm’n,
 
 498 So.2d 992, 993 (Fla. 1st DCA 1986) (quoting section 443.021, Florida Statutes (1985));
 
 see also Recio,
 
 727 So.2d at 321 (“The purpose of Florida’s Unemployment Compensation Law is remedial and the law generally must be liberally construed in favor of claimants.”). To effectuate this purpose, section 443.101(1)(a), Florida Statutes (2009), provides that an individual is not disqualified for unemployment benefits where the individual has “voluntarily left work with good cause attributable” to the employer. § 443.101(1)(a), Fla. Stat. (2009). “Good cause” includes cause attributable to the employer, which “as contemplated by the unemployment compensation law, describes that which would drive an average, able-bodied worker to quit his or her job.”
 
 Recio,
 
 727 So.2d at 321;
 
 Uniweld Prods., Inc. v. Indus. Relations Comm’n,
 
 277 So.2d 827, 829 (Fla. 4th DCA 1973);
 
 Diaz v. Unemployment Appeals Comm’n,
 
 31 So.3d 271, 272 (Fla. 5th DCA 2010).
 

 The Referee determined that, although Claimant owed Employer $2,005.00 at the time of separation, the conditions under the Draw Policy were not contrary to the terms of Claimant’s employment. In addition, because Claimant was aware of the Draw Policy and continued to work under those conditions, he essentially accepted the Draw Policy and, therefore, did not have good cause- to quit when he did so approximately one year later. “Accordingly, the propriety of the disqualification for benefits herein rests upon the legal conclusion that claimant ‘acquiesced’ in [the Draw Policy] by remaining on the job for another year before quitting.”
 
 Recio,
 
 727 So.2d at 321. In addition, the disqualification, stems from the conclusion that the conditions of the Draw Policy, which retain federal and state mandated minimum wages, were not contrary to Claimant’s employment.
 

 The UAC’s and Referee’s legal conclusions are clearly erroneous. First, the Referee determined that Employer implemented a Draw Policy, which created an employment condition that withheld Claimant’s minimum wages to such an extent that Claimant became indebted to Employer for $2,005.00. For example, when Claimant was asked for his reason in resigning, Claimant consistently stated-that it was
 

 
 *172
 
 [b]ecause I owed them so much money. The months went by and I kept owing more money. They would pay me less than minimum wage, about three or four dollars an hour, and I had to work Saturday and Sunday and work 60 hours and get paid $290, and I owed it to them. They didn’t even pay it to me. It wasn’t really paid to me at the end of the month. The manager hands you a piece of paper, you owe $800, you owe $1,000.
 

 Employer’s own witness corroborated this testimony, stating that, at the time Claimant quit, the amount owed to Employer was $2,005.72. Additionally, Claimant twice stated that he believed that Employer was in violation of the Fair Labor Standards Act (the “FLSA”) and alluded to a pending FLSA lawsuit in which Claimant alleged. Employer owed his minimum wages.
 

 Section 448.110(3), Florida Statutes (2009), the Florida Minimum Wage Act, states, in pertinent part:
 

 (3) Effective May 2, 2005, employers shall pay employees a minimum wage at an hourly rate of $6.15 for all hours worked in Florida. Only those individuals entitled to receive the federal minimum wage under the federal Fair Labor Standards Act and its implementing regulations shall be eligible to receive the state minimum wage pursuant to s. 24, Art. X of the State Constitution and this section. The provisions of ss. 213 and 214 of the federal Fair Labor Standards Act, as interpreted by applicable federal regulations and implemented by the Secretary of Labor, are incorporated herein.
 

 § 448.110(3), Fla. Stat. (2009). Under the plain text, Employer was required to pay Claimant a minimum wage for all hours worked during the course of employment. Furthermore, Claimant is an “individúale ] entitled to receive the federal minimum wage under the Fair Labor Standards Act.” § 448.110(3), Fla. Stat. (2009).
 

 The FLSA provides that “every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages” during each applicable pay period. 29 U.S.C. § 206 (2009). It is unlawful for an employer to not pay an employee at least a minimum wage for every hour worked during the applicable pay period. 29 U.S.C. § 215(2) (2009).
 

 “[T]he [FLSA] clearly requires an employee to be
 
 paid
 
 the minimum wage for each hour worked during the pay period.”
 
 Olson v. Superior Pontiac-GMC, Inc.,
 
 765 F.2d 1570, 1578 (11th Cir.1985),
 
 modified on other grounds,
 
 776 F.2d 265 (11th.Cir.1985). Excess commissions are allowed to be carried forward from one pay period “and applied to the minimum wage for the next period so long as the employee actually received the minimum wage for each hour worked within each separate pay period.”
 
 Id.
 
 at 1579. However, alternations of “excess commissions earned in the preceding period being applied toward the minimum wage for the current period will not suffice.”
 
 Id.
 
 Because “[t]he employee must
 
 actually receive
 
 the minimum wage each pay period[,]” the Draw Policy implemented by Employer was unlawful.
 
 Id.
 
 Here, not only did Employer withhold the minimum wage for the pay period at the end of the month, but also carried over a credit to Employer for the amount due, a clear violation of the FLSA. Accordingly, Employer’s actions were unlawful in so far as the Draw Policy circumvented Employer’s obligation to pay Claimant at least the minimum wage for every hour worked during the applicable pay period. Thus, by its
 
 *173
 
 very terms, the Draw Policy allowed Employer to withhold Claimant’s minimum wages in direct contravention of both Florida Statutes and the FLSA.
 

 Furthermore, the fact that Claimant was employed as a salesman, whose wages were derived from commissions, did not negate Employer’s obligation, as. a matter of law, to provide Claimant a minimum wage for all time worked for a respective pay period.
 

 Requiring automobile dealers to pay their commissioned salesmen the minimum wage will not destroy the commission sales system. It will merely require the employers to maintain adequate records to ensure that their salespersons are receiving at least the minimum wage for each hour worked during the relevant pay period.
 

 Id.
 
 at 1580-81. The record contains substantial competent evidence that the Draw Policy, to which Claimant worked under, contained unlawful wage conditions. Therefore, the UAC erred in its conclusion that the conditions were not contrary to the terms of Claimant’s employment.
 

 Second, the Referee determined that because there was no objection to the Draw Policy’s conditions, under which Claimant worked for over a year, Claimant thereby accepted the terms. Again, this conclusion is clearly erroneous as a matter of law. It has been long established that the statutory rights under the FLSA cannot be waived by an employee.
 
 See Sosnowy v. A. Perri Farms, Inc.,
 
 No. 10-CV-2829, 764 F.Supp.2d 457, 468, 2011 WL 488692, at *10 (E.D.N.Y. February 10, 2011) (“It is well-established that parties cannot contract for lesser protections than the FLSA, which sets the lower limit for overtime compensation.”);
 
 Fuentes v. CAI Int’l., Inc.,
 
 728 F.Supp.2d 1347, 1354 (S.D.Fla.2010) (“Because the FLSA requires overtime compensation for hours worked in excess of 40, which cannot be contractually abridged or waived, the plaintiffs contractual waiver of overtime in the Release and Waiver of Overtime Compensation is preempted by the FLSA.”).
 

 Moreover, Florida’s “unemployment compensation statute is ... to be liberally construed in favor of the claimant; by contrast, its disqualification provisions, being remedial in nature, are to be narrowly construed.”
 
 Davidson v. AAA Cooper Transp.,
 
 852 So.2d 398, 401 (Fla. 3d DCA 2003). Florida’s Constitution provides that
 

 [a]ll working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship.
 

 Article X, § 24, Fla. Const. As the Florida Statutes expressly adopt the FLSA, as interpreted and implemented by federal law, “[n]o one can doubt but that to allow waiver of statutory [minimum] wages by agreement would nullify the purposes of the [FLSA].”
 
 Id.; see also Recio,
 
 727 So.2d at 321 (holding that in Florida, there is no legal presumption that an employee acquiesces to wage modifications by remaining on the job). As the record contains competent substantial evidence that Employer unlawfully withheld the mandated minimum wage under the FLSA and Florida law, the UAC’s determination that Claimant “knew and accepted the terms of the Draw Policy,” and had no good cause for the separation is legally erroneous,
 

 We note that, twice before, this Court has addressed whether an employee was eligible for unemployment benefits where he was not receiving compensation in violation of the FLSA.
 
 See Madison v. Williams Island Country Club, Ltd.,
 
 606
 
 *174
 
 So.2d 687 (Fla. 3d DCA 1992);
 
 Mueller v. Harry Lee Motors,
 
 334 So.2d 67 (Fla. 3d DCA 1976). In each case, this Court held that where the employee’s separation was based on an unlawful condition under the FLSA, the employee remained eligible for unemployment benefits. In
 
 Madison,
 
 we held that “an employee who was discharged for refusing to work overtime without pay is ... entitled to receive unemployment compensation benefits.”
 
 Madison,
 
 606 So.2d at 689. Likewise, in
 
 Mueller,
 
 we held that an employee was eligible for unemployment benefits where his separation was based on good cause attributable to the employer for not receiving overtime compensation.
 
 Mueller,
 
 334 So.2d at 67. In addition, the Fourth District upheld the eligibility of unemployment compensation benefits where the FLSA is applicable to the employee. In
 
 LawnCo Services, Inc.,
 
 the appellate court reversed the UAC’s determination for eligibility of unemployment benefits, concluding that there was not good cause attributable to the employer.
 
 LawnCo Servs., Inc. v. Unemployment Appeals Comm’n
 
 946 So.2d 586 (Fla. 4th DCA 2006). In reversing the UAC, the Fourth District reasoned, in part, that the FLSA was not applicable to the employee, and therefore, when the employee voluntarily quit for not receiving overtime compensation, good cause attributable to the employer could not be found because of the failure to follow the requirements of the FLSA.
 
 Id.
 
 at 589. Therefore, the FLSA and Florida law is applicable to find good cause attributable to Employer and allow for unemployment benefits where “evidence in the record which would indicate that [Employer] is an ‘enterprise’ under the FLSA[.]”
 
 Id.
 
 Accordingly, an employee who has voluntarily left work for not receiving minimum wage compensation for the time worked in a pay period is entitled to receive unemployment compensation benefits.
 

 “It must be kept in mind that Section 443.101(l)(a) only protects workers of employers who wrongfully cause their employees to ‘voluntarily’ leave their employment.”
 
 Moore,
 
 498 So.2d at 993. Employer’s unlawful action in withholding Claimant’s minimum wages to such an extent that it became money owed to Employer, must be viewed as such a wrongful act. Also important is the fact that inherent in the UAC’s determination that Claimant’s voluntary leave was without good cause attributable to Employer, is the conclusion that Claimant was legally required to work without getting paid minimum wages.
 
 Madison,
 
 606 So.2d at 689. This is not the law, and therefore, Claimant’s separation was for good cause attributable to Employer.
 

 Because the record supports the legal determination that Claimant left his job for good cause attributable to Employer, we reverse and remand with directions to the UAC to award the requested benefits.
 

 Reversed and remanded with instructions consistent with this opinion.
 

 [1]
 

 . When Claimant first applied for unemployment benefits, the first appeals referee, determined Claimant was disqualified because he left without good cause attributable to the employer under law. On a prior appeal, the UAC vacated the first appeals referee’s legal determination in not sufficiently developing the record. The UAC directed that, on remand, the Referee first determine whether Employer unilaterally changed, to Claimant’s detriment, the terms and conditions of employment with respect to compensation by reducing the weekly draw against any commission earned. Then, the Referee was to determine whether the resignation was in reaction to the Draw Policy, or to the low earnings attributable to his commissions.
 

 [2]
 

 . Subsequently, Claimant joined a collective action against Employer seeking recovery of unpaid minimum wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201. The parties entered into a settlement agreement wherein Claimant was awarded $4,733.87 in unpaid wages
 
 *171
 
 along with $4,733.87 in liquidated damages, totaling $9,467.74: