BENTON, C.J.
Jonathan Ogle appeals an order of the Unemployment Appeals Commission (UAC) reversing the decision of an appeals referee that found him eligible for unemployment benefits. We reverse and remand with directions that the UAC adopt the appeals referee’s decision, and order, benefits accordingly.
On judicial review, the UAC’s order is entitled to a presumption of correctness, to be sure. See Kelle v. D.H. Holmes Co., Ltd., 658 So.2d 1161, 1162 (Fla. 2d DCA 1995). “Absent a clearly erroneous decision by the [UAC], the Commission’s decision cannot be overturned.” Wells v. Fla. Unemployment Appeals Comm’n, 767 So.2d 624, 625 (Fla. 3d DCA 2000). But the UAC must itself adhere to prescribed standards of review when it reviews a decision of the appeals referee:
The Commission’s standard of review of an appeals referee’s decision is whether the referee’s findings of fact are based on competent, substantial record evidence and whether the proceedings on which those findings are based complied with the essential requirements of law. *1267 The appeals referee, as the trier of fact, is privileged to weigh and reject conflicting evidence, and the Commission cannot reweigh the evidence and substitute its findings for those of the referee. Although the Commission may reject the referee’s conclusions of law without limitation, it may not modify the facts to reach a different legal conclusion, rely on facts that were not established at the hearing, or rely on a theory not advanced by one party or anticipated by the other. This Court cannot make credibility determinations or substitute its judgment for that of the referee and must uphold the appeals referee’s decision where there is competent, substantial evidence to support it.
Howell & O’Neal v. Fla. Unemployment Appeals Comm’n, 934 So.2d 570, 575 (Fla. 1st DCA 2006) (citations omitted). The UAC and, indeed, we ourselves are bound by the appeals referee’s findings of fact, unless the findings of fact are unsupported by competent, substantial evidence.
Mr. Ogle concedes he voluntarily quit his employment as a salesman at Dick DeVoe Buick Cadillac, Inc. (DeVoe), where he worked from September 7, 2010, to October 11, 2010. See Miller v. Fla. Unemployment Appeals Comm’n, 768 So.2d 1218, 1219 (Fla. 4th DCA 2000). He appeals the UAC’s determination that he was disqualified from receiving unemployment benefits, despite the appeals referee’s finding that his reason for quitting was attributable to the employer. “[Sjection 443.101(l)(a), Florida Statutes (2009), provides that an individual is not disqualified for unemployment benefits where the individual has ‘voluntarily left work with good cause attributable’ to the employer. § 443.101(l)(a), Fla. Stat. (2009). ‘Good cause’ includes cause attributable to the employer, which ‘as contemplated by the unemployment compensation law, describes that which would drive an average, able-bodied worker to quit his or her job.’ Recio [v. Kent See. Servs. Inc., 727 So.2d 320, 321 (Fla. 3d DCA 1999)]; Uniweld Prods., Inc. v. Indus. Relations Comm’n, 277 So.2d 827, 829 (Fla. 4th DCA 1973); Diaz v. Unemployment Appeals Comm’n, 31 So.3d 271, 272 (Fla. 5th DCA 2010).” Martinez v. Ford Midway Mall, Inc., 59 So.3d 168, 171 (Fla. 3d DCA 2011).
As a factual matter, the appeals referee concluded that Mr. Ogle established good cause for quitting attributable to his employer. The referee found — and competent, substantial evidence in the record supports the findings — that Mr. Ogle was not paid what was agreed at the time of hire: He was advised at the time of hire that he would be paid commissions for any week in which his sales commission exceeded the minimum wage for the week, but later found out that commissions would only be paid if the amount was in excess of the minimum wage amount for the month. This testimony was unrefuted, as nobody from the dealership testified at the hearing as to what Mr. Ogle was told at the time of hire. “[Misrepresenting the amount of salary to an employee or failure to comply with a salary agreement is sufficient cause to compel the average employee to leave his or her employment and, therefore, constitutes good cause attributable to the employer to justify an award of benefits to the employee.” Kelly v. Unemployment Appeals Comm’n, 823 So.2d 275, 279-80 (Fla. 5th DCA 2002).
At a telephone hearing, Mr. Ogle testified that he quit because the wages he received were not what he discussed and agreed to with the general sales manager who hired him. Mr. Ogle also testified that, as part of his wage package, he was promised database leads and access to the database, but that he never received any leads and his computer login never *1268 worked, so he never had access to the database. He testified that DeVoe paid a minimum wage draw, and “[i]f you reach the threshold of the minimum wage in the pay period, then you don’t take the minimum draw, you get paid your commission.” But, he testified, “they were taking back all the minimum wage because they were taking all the money back, and they were doing it outside of the pay period. And that’s not what I agreed to.” He testified that he did not realize there was a discrepancy until he sold a car during the last ten days of employment and then only when he received a paycheck that did not include the commission. He tried to speak to the sales manager who hired him, but the manager was fired the same day Mr. Ogle discovered the alleged underpayment.
Melinda Harrison, general manager for DeVoe Volvo Infinity, testified that she was not involved in hiring Mr. Ogle. But, she testified, the dealership had a uniform, written pay plan that was identical for every sales representative which, she was “confident,” stated that any commissions earned would be reduced or “used to recoup the draw” for the whole month, not just the week. Noting Ms. Harrison was not present when Mr. Ogle was hired and could not give a firsthand account of what he was told then, the referee made the following findings of fact:
The claimant worked for the employer, an automobile sales and service company, from September 7, 2010, until October 11, 2010, as a sales representative. The claimant was advised at time of hire that he would be paid minimum wage, and would be paid commissions for any week in which his sales commission amount exceeded the minimum wage pay. The claimant was also advised at time of hire that he would be given sales leads (contact information for former and prospective customers) and access to the employer’s database so that he could complete online training. The claimant received no leads, and his database login password never worked. The claimant addressed concern over these issues to his supervisor on several occasions, but no action was taken. During the claimant’s final ten days of employment, the claimant made a single sale, with a commission of approximately $300.00. The claimant then learned that commission pay would only be received if the amount was in excess of the minimum wage amount for the month, not the week. The claimant attempted to speak with his supervisor, but found that the supervisor had been discharged and replaced. The claimant did not discuss the issue with his new supervisor. The claimant resigned from the job on October 11, 2010.
The appeals referee concluded that, although Mr. Ogle was the “moving party in the separation,” he quit because he was “not given sales leads and database access as promised at time of hire, and because the pay arrangements differed from what was explained to the claimant at time of hire.” The referee concluded that the actual conditions of employment differed from the terms of employment offered to Mr. Ogle at the time of hire, so that he had good cause for quitting, attributable to his employer.
The UAC reversed the decision of the appeals referee. Without elaborating, it announced that the referee’s findings were not supported by competent, substantial evidence. The UAC added that “even if the employee arguably has ‘good cause’ to leave his or her employment, he or she may be disqualified from benefits based on a failure to expend reasonable effort to preserve his or her employment,” and found that, based on the record, it could not conclude that Mr. Ogle put forth a reasonable effort to preserve his employ *1269 ment prior to quitting. The UAC found that Mr. Ogle did not raise his concerns with his new supervisor or attempt to discuss the matter with Ms. Harrison.
An employee who quits with good cause attributable to his employer may nevertheless be disqualified from benefits, based on a failure to make reasonable efforts to preserve his or her employment. But an employee need only expend reasonable efforts. There must be a realistic possibility they will not be futile. See Glenn v. Fla. Unemployment Appeals Comm’n, 516 So.2d 88, 89 (Fla. 3d DCA 1987) (“Whenever feasible, an individual is expected to expend reasonable efforts to preserve his employment.”). For example, in Willick v. Unemployment Appeals Comm’n, 885 So.2d 440, 441 (Fla. 2d DCA 2004), Willick’s manager became upset at her and told her to leave the property. When she asked the president of the company, “Is this it?” he responded that it depended on the manager. Willick left the job site and did not speak with “the same manager who had become upset and hostile toward her when she previously discussed the situation with him, and had threatened to call the police if she did not leave the property.” Id. at 443.
The Second District distinguished the cases in which claimants were “confronted with clear allegations of misconduct” and were presented with “established grievance procedures ... as a means of challenging ... termination.” Id. The court found that Willick “was not presented with a feasible grievance procedure through which there was a reasonable possibility for her to preserve her employment,” and her “failure to pursue the frivolous step of speaking again with her manager d[id] not provide competent, substantial evidence that Willick voluntarily left her employment without good cause.” Id. Cf. Borakove v. Fla. Unemployment Appeals Comm’n, 14 So.3d 249, 251 (Fla. 1st DCA 2009) (upholding referee’s finding that claimant had not given his employer a reasonable opportunity to address his concerns and to offer accommodations or solutions before he quit after one day on the job); LawnCo Servs., Inc. v. Unemployment Appeals Comm’n, 946 So.2d 586, 588-89 (Fla. 4th DCA 2006) (upholding referee’s decision that claimant did not establish good cause to quit his job because he never advised his employer that he thought he was not being properly compensated and thus had not established that he made a reasonable and adequate effort to maintain and preserve the employment relationship).
Ms. Harrison testified that every sales representative at the dealership was under an identical, written pay plan. There was no evidence that any exception had ever been made or any reason to believe that any exception would ever be made. Given the testimony, the UAC had no basis to find that Mr. Ogle was obligated to discuss his dissatisfaction with the pay arrangement with his supervisor or with Ms. Harrison. Because the pay arrangement was the same for every sales representative, there is no reason to think that Mr. Ogle’s supervisor would have been willing or able to change the terms of his salary.
Although Ms. Harrison testified that Mr. Ogle never talked to her about an issue with the pay agreement, nobody testified that Mr. Ogle should have talked to her, or that there was any general procedure in place at the dealership for employees to use to complain about pay issues. See Belcher v. Unemployment Appeals Comm’n, 882 So.2d 486, 488-89 (Fla. 5th DCA 2004) (finding that “reasonable effort to preserve employment” requirement did not control where claimant quit physically demanding job without asking her supervisor for assistance or going to anyone above *1270 her supervisor to complain about working conditions). There was no evidence that any employee had ever been permitted to question the employer’s “pay plan.” The employer defended not on the ground that the employee could have negotiated a new salary arrangement but on the ground that he had not been misinformed about the arrangements under which he was hired. The appeals referee rejected this view of the facts.
In any event, the “reasonableness of the efforts to rectify is a matter for the finder of fact.” Kralj v. Fla. Unemployment Appeals Comm’n, 537 So.2d 201, 202 (Fla. 2d DCA 1989). In Kralj, the claimant was told she would be earning $24,000 by the end of her first year, but instead was earning $17,600. When she approached her immediate supervisor, he told her that he had checked with the personnel department and she was receiving the highest salary available for her classification. Id. The appeals referee found that Kralj had quit with good cause attributable to her employer, but the UAC reversed, finding that even though the employer breached the employment agreement, the claimant did not take all reasonable steps available to remedy the situation. The Second District reversed the UAC, finding that there was no established procedure for resolution of such problems. Id.
In the present case, too, the evidence did not reveal that DeVoe had a clearly established procedure for resolution of employee salary issues. In fact, Ms. Harrison’s testimony tended to show that there was no room within which such a procedure could operate. To the extent that the UAC’s statements that Ms. Harrison “gave unrefuted testimony that, despite an open door policy, the claimant never discussed any of his initial concerns with her prior to quitting,” and that Mr. Ogle “testified he felt it was his initial supervisor’s responsibility to raise his concerns to higher management,” constitute findings that Mr. Ogle did not use reasonable efforts to rectify his salary issue, the UAC “modified] the [appeals referee’s] facts to reach a different legal conclusion.” Howell & O’Neal, 934 So.2d at 575.
Reversed and remanded, with directions.
VAN NORTWICK, J., concurs; WOLF, J., concurs with opinion.